UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DEMANY BROWNE,**<br>individually and on behalf of a class of similarly situated persons,<br><br>      Plaintiff,<br><br>  v.<br><br>**EZRICARE LLC; and DELSAM PHARMA LLC;**.<br>      Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Demany Browne ("Plaintiff") brings this Class Action Complaint on behalf of himself and all persons similarly situated who purchased EzriCare Artificial Tears and Delsam Pharma Artificial Tears (collectively the "Products")[1] manufactured, imported, sold, marketed, labeled, and distributed by Defendants Ezricare LLC and Delsam Pharama LLC. (collectively "Defendants").[2] Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. Defendants manufacture, design, import, advertise, label, distribute, market, and sell several over-the-counter pharmaceutical products, including the above-named Products, which contain a solution of Carboxymethylcellulose Sodium 10 MG in 1 ml.

2. Defendants' artificial tears are adulterated and contaminated with "a rare, extensively drug-resistant strain of *Pseudomonas aeruginosa* bacteria."[3]

3. The presence of the *Pseudomonas Aeruginosa* bacteria in the Products is due to, among other things, Defendants' violation of Current Good Manufacturing Processes (as identified by the Food and Drug Administration), including "lack of appropriate microbial testing, formulation issues (the company manufactures and distributes ophthalmic drugs in multi-use

---

[1] Plaintiff reserves the right to amend, add to, or modify the definition of Products through facts obtained later in investigation and discovery.
[2] Plaintiff reserves the right to add or modify the Defendants who contributed to the deceptive and illegal conduct alleged herein.
[3] *See FDA warns consumers not to purchase or use EzriCare Artificial Tears due to potential contamination*, FOOD & DRUG ADMIN. (Feb. 2, 2023), located at https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns- con-sumers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination.

2

bottles, without an adequate preservative), and lack of proper controls concerning tamper-evident packaging."[4]

4. These violations, along with the presence of this rare and, in some cases, deadly, bacteria pose a significant and severe health risk to consumers, such as Plaintiff and the putative class, who purchased and used Defendants' Products.

5. Plaintiff and the putative class suffered economic damages due to Defendants' misconduct (as set forth below) and seek damages for the purchase of the contaminated Products they purchased.

## PARTIES

**Plaintiff**

6. Plaintiff Browne is an individual and citizen of New York who resides in Brooklyn, New York. Plaintiff purchased Delsam Pharma's artificial tears dry eye relief from Walmart Supercenter in Valley Stream, New York in approximately July 2022. Plaintiff purchased the Product at the retail price charged by Walmart at that time. During that time, based on the false and misleading claims by Defendants, Plaintiff was unaware that Defendants' Product may be adulterated and contaminated with the dangerous *Pseudomonas Aeruginosa* bacteria. Plaintiff purchased Defendants' Product on the assumption that the labeling of Defendants' Products was accurate and that the Products were unadulterated, safe, and effective and, most importantly, were not contaminated (or were not at risk of being contaminated) with this deadly bacterium. Plaintiff would not have purchased Defendants' artificial tear product(s) had he known there was a risk the product may contain the *Pseudomonas Aeruginosa* bacteria and cause severe infection. As a result, Plaintiff suffered injury in fact when he spent money to purchase Defendants' Products he would

---
[4] *Id.*

3

not otherwise have purchased, and/or paid more for the Products, absent Defendants' deceptive conduct, as alleged below.

**Defendants**

7. Defendant EzriCare LLC is, and at all times relevant to this action was, a New Jersey Limited Liability Company with its principal place of business located at 1525 Prospect Street, Suite 204, Lakewood, NJ 08701. EzriCare LLC markets, advertises, labels, distributes, and sells the Products at issue in this litigation.

8. Defendant Delsam Pharma LLC is, and at all times relevant to this action was, a New York Limited Liability Company with its principal place of business located in the Bronx, New York 10567, and process may be served upon its registered agent, Kuppusamy Arumugam at 925 Protano Lane, Mamaroneck, New York, 10543. Delsam Pharma LLC markets, advertises, labels, distributes, and sells the Products at issue in this litigation.

9. On information and belief, the labeling for the Products, that Plaintiff and Class members read and relied upon in making their decisions to purchase the Products were conceived, designed, prepared and/or approved by Defendants and were disseminated by Defendants and their agents through labeling, marketing and advertising containing the misrepresentations, from Defendants' headquarters.

10. On information and belief, in committing the wrongful acts alleged herein, Defendants, in connection with their subsidiaries, affiliates and/or other related entities and their employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Products, and Defendants participated in the making of such representations and/or omissions of material fact in that it disseminated the contaminated Products or caused them to be disseminated.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000 (five million dollars) exclusive of interest and costs, and at least one member of the putative class is a citizen of a state different from at least one Defendant. Specifically, Plaintiff is a resident and citizen of New York, while Defendant EzriCare LLC is a resident and citizen of New Jersey, with its principal place of business in New York. None of the exceptions of 28 U.S.C. §1332(d) are applicable.

12. This Court has personal jurisdiction over Defendants because they conduct and transact business within the District, and contract to supply and supply the Products within the District by, among other things, marketing, advertising, and selling the Products in the District. Further, Plaintiff's claims arise from Defendants' conduct within the District.

13. Venue is proper because Plaintiff and many class members reside in this District, Defendants do business in this District and in New York, and a substantial part of the events giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

**A. EzriCare Artificial Tears**

14. The NDC number for EzriCare Artificial Tears is 79503-101-15.

15. EzriCare LLC began labeling, advertising, marketing, and selling the Products on or about November 22, 2020.

16. The Products are intended to be used in the following manner: (1) as a protectant against further irritation or to relieve dryness of the eye; and (2) for the temporary relief of discomfort due to minor irritations of the eye, or to exposure to wind or sun.[5]

17. The Products are purportedly "preservative free," which removes any chemical used to prevent the growth of bacteria in the product.[6]

18. The active ingredient in the Product is a solution of Carboxymethylcellulose Sodium 10 MG in 1 ml. The inactive ingredients include Boric Acid, Potassium Chloride, Sodium Chloride, Calcium Chloride Dihydrate, Magnesium Chloride, Sodium Chlorite, Sodium Hydroxide, and Water for Injection.[7]

19. The Products' packaging and labeling appear as follows:



---

[5] *See* EzriCare ArtificialTears Product Monograph, located at https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=ac1ea23c-f1c6-418f-921e- 58553ee919cb&type=display.
[6] *See Outbreak of Extensively Drug-resistant Pseudomonas aeruginosa Associated with Artificial Tears*, CDC HEALTH ALERT NETWORK, located at https://emergency.cdc.gov/han/2023/han00485.asp?ACSTrackingID=USCDC_511- DM98842&ACSTrackingLabel=HAN%20485%20-%20General%20Public&deliveryName=USCDC_511- DM98842.
[7] *Id.*

6



**B. Delsam Pharma's Artificial Tears**

20. The NDC number for Delsam Pharma's Artificial Tears is 72570-121-15.

21. Delsam Pharma LLC began marketing the Products on or about July 23, 2020.

22. The Products are a substantially similar product to EzriCare Artificial Tears. The Products are simply different brands of the same chemical solution (in terms of active ingredients). And like the EzriCare-branded Products, Delsam Pharma's Products are intended to be used in the following manner: (1) as a protectant against further irritation or to relieve dryness of the eye; and (2) for the temporary relief of discomfort due to minor irritations of the eye, or to exposure to wind or sun.

23. According to its website, Delsam Pharma's Products use preservatives "to keep bacteria from growing in the bottle of the drops."[8]

---

[8] *See* https://delsampharma.com/store/delsam-pharma-artificial-tears.

24. The active ingredient in the Products is a solution of Carboxymethylcellulose Sodium 10 MG in 1 ml. The inactive ingredients include Boric Acid, Potassium Chloride, Sodium Chloride, Calcium Chloride Dihydrate, Magnesium Chloride, Sodium Chlorite, Sodium Hydroxide, and Water for Injection.[9]

25. The Products' packaging and labeling appear as follows:



---

[9] *Id.*

### C. The *Pseudomonas Aeruginosa* Bacteria

26. The *Pseudomonas Aeruginosa* bacteria is not a new bacteria, but it is notorious for being "versatile" and "innately drug resistant."[10] It is most frequently found in the environment, such as within the soil and/or freshwater.

27. However, the *Pseudomonas Aeruginosa* bacteria is also known to infect humans, and it can cause severe skin, eye, lung, and other infections throughout the body.

28. Currently, it is estimated that the *Pseudomonas Aeruginosa* bacteria is resistant to the following antibiotics: cefepime, ceftazidime, piperacillin-tazobactam, aztreonam, carbapenems, ceftazidime-avibactam, ceftolozane-tazobactam, fluoroquinolones, polymyxins, amikacin, gentamicin, and tobramycin.[11]

### D. An Outbreak of *Pseudomonas Aeruginosa* Was Caused by Using Defendants' Products

29. The current outbreak of the *Pseudomonas Aeruginosa* bacteria resulting from the use of the EzriCare and/or Delsam Pharma Artificial Tears began in May 2022 and has been linked to at least 12 states, so far: California, Colorado, Connecticut, Florida, New Jersey, New Mexico, New York, Nevada, Texas, Utah, Washington, and Wisconsin.[12]

30. The U.S. Centers for Disease Control ("CDC") has isolated the specific strain of *Pseudomonas Aeruginosa* and identified it as Verona Integron-mediated Metallo-β-lactamase (VIM) and Guiana-Extended Spectrum-β-Lactamase (GES)-producing carbapenem-resistant

---

[10] Beth Mole, *Extremely drug-resistant germ found in eye drops infects 55 in 12 states; 1 dead*, ARS TECHNICA (Feb. 2, 2023), located at https://arstechnica.com/science/2023/02/extremely-drug-resistant-germ-found-in-eye-drops- infects-55-in-12-states-1-dead/.
[11] *Id.*
[12] *Id.*

Pseudomonas aeruginosa ("VIM-GES-CRPA").[13] This particular strand is incredibly drug-resistant and very dangerous.

31. The CDC reported that its "laboratory testing identified the presence of the outbreak strain in opened EzriCare bottles with different lot numbers collected from two states."[14]

32. The CDC also reported that it was able to isolate the outbreak strain from 13 sputum or bronchial washes, 11 cornea swabs, seven urine samples, two blood samples, 25 rectal swabs, and four other nonsterile sources.[15,16]

33. As a result of using the Products, out of the 55 individuals who have been identified as having been infected with the *Pseudomonas Aeruginosa* bacteria from the use of the Products thus far, approximately three people have suffered permanent vision loss, and one person has died due to a systemic infection. Others have endured extensive treatment to treat their infections.

E. **Defendants' Products Have Been Recalled**

34. On January 24, 2023, Defendant EzriCare LLC first issued a statement on the contamination of its artificial tears product, stating; "EzriCare became aware in the last few days that the Center for Disease Control (CDC) is conducting an ongoing investigation related to adverse events implicating various Over the Counter (OTC) eye drops."[17]

---

[13] *See Outbreak of Extensively Drug-resistant Pseudomonas aeruginosa Associated with Artificial Tears*, CDC HEALTH ALERT NETWORK, located at https://emergency.cdc.gov/han/2023/han00485.asp?ACSTrackingID=USCDC_511-DM98842&ACSTrackingLabel=HAN%20485%20-%20General%20Public&deliveryName=USCDC_511-DM98842.
[14] *Id.*
[15] Beth Mole, *Extremely drug-resistant germ found in eye drops infects 55 in 12 states; 1 dead*, ARS TECHNICA (Feb. 2, 2023), located at https://arstechnica.com/science/2023/02/extremely-drug-resistant-germ-found-in-eye-drops-infects-55-in-12-states-1-dead/.
[16] *FDA warns consumers not to purchase or use EzriCare Artificial Tears due to potential contamination*, FOOD & DRUG ADMIN. (Feb. 2, 2023), located at https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination.
[17] EzriCare Artificial Tears - Discontinue Use (Feb. 2, 2023), located at https://ezricare-info.com.

35. After the development of this story, on February 1, 2023, EzriCare issued another statement: "EzriCare, LLC first received notice of the CDC's ongoing investigation into a multistate cluster of Pseudomonas aeruginosa infections on January 20, 2023. As of today, we are not aware of any testing that definitively links the Pseudomonas aeruginosa outbreak to EzriCare Artificial Tears. Nonetheless, we immediately took action to stop any further distribution or sale of EzriCare Artificial Tears. To the greatest extent possible, we have been contacting customers to advise them against continued use of the product. We also immediately reached out to both CDC and FDA and indicated our willingness to cooperate with any requests they may have of us."[18]

36. Additionally, on February 1, 2023, Global Pharma Healthcare initiated a voluntary recall of all unexpired lots of EzriCare Artificial Tears and Delsam Pharma's Artificial Tears.[19]

37. Then, on February 2, 2023, the U.S. Food and Drug Administration ("FDA") issued a statement "warning consumers and health care practitioners not to purchase and to stop using EzriCare Artificial Tears or Delsam Pharma's Artificial Tears due to bacterial contamination."[20] The FDA highlighted that it recommended Global Pharma initiate a product recall due to "the company's current good manufacturing practice (CGMP) . . . violations, including lack of appropriate microbial testing, formulation issues (the company manufactures and distributes ophthalmic drugs in multi-use bottles, without an adequate preservative), and lack of proper controls concerning tamper-evidence packaging."[21]

38. Further, the FDA also "placed Global Pharma Healthcare Private Limited on import alert . . . for providing an inadequate response to a records request and for not complying with

---

[18] *Id.*
[19] *See* Global Pharma Healthcare Issues Voluntary Nationwide Recall of Artificial Tears Lubricant Eye Drops Due to Possible Contamination, located at https://global-pharma.com/otc.pdf.
[20] *FDA warns consumers not to purchase or use EzriCare Artificial Tears due to potential contamination*, FOOD & DRUG ADMIN. (Feb. 2, 2023), located at https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns- consum-ers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination.
[21] *Id.*

CGMP requirements."[22] According to the FDA, the import alert "prevents these products from entering the United States."[23]

39. Because of Defendants' actions, the Products are worthless and certainly worth less than what Plaintiff and class members paid to purchase them.

40. Had Defendants not informed Plaintiff and the Class members of the existence of *Pseudomonas Aeruginosa* bacteria in the Products (or that the Products risked containing *Pseudomonas Aeruginosa*), they would not have been willing to pay the same amounts for the Products they purchased, if at all.

41. Plaintiff and the Class members paid for Products that they reasonably believed did not contain *Pseudomonas Aeruginosa* bacteria, but they did not receive what they paid for. Unfortunately, the Products Plaintiff and the Class members purchased, received, and used were contaminated and illegal to sell, thereby making the Products worthless or certainly worth less than what Plaintiff and Class Member paid.

42. Based on Defendants' actions, they were able to, and did, charge a premium price for the Products over the cost of competitive products that did not contain *Pseudomonas Aeruginosa* bacteria.

43. Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the Products due to Defendants' actions as described above. Plaintiff and the Class members paid more for the Products than they would have (if at all) had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendants' deceptive and unlawful conduct.

---

[22] *Id.*
[23] *Id.*

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and the following classes defined as follows:

> All persons who purchased the Products within the United States for personal, family, or household use during the Class Period. (the "Nationwide Class")
>
> All persons who purchased the Products within New York for personal, family, or household use during the Class Period. (the "New York Subclass")

(the Nationwide Class and New York Subclass collectively the "Class")

45. "Class Period" means the period from three years prior to the filing of this Complaint through the date of class certification.

46. Excluded from the Class are Defendants' current or former officers, directors, and employees; counsel for Plaintiff and Defendants; and the judicial officer to whom this lawsuit is assigned.

47. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise. Plaintiff also reserves the right to create subclasses.

48. Plaintiff expressly disclaims any claims for personal injuries. Moreover, the definition of the "Class" expressly excludes any individual's claims for personal injuries as a result of the conduct alleged in this Complaint.

49. The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

50. <u>Numerosity</u>: The members of each class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown to Plaintiff, based on Defendants' volume of sales, Plaintiff estimates that the Class numbers are in

the thousands. Defendants' books and records will contain more detailed information regarding the size of the Class.

51. <u>Commonality</u>: There are questions of law and fact that are common to the Class members and that predominate over individual questions. These include the following:

a. Whether the Products contain *Pseudomonas Aeruginosa* bacteria;

b. Whether the Products were adulterated;

c. Whether Defendants' misrepresentations and omissions were material to Plaintiff and reasonable consumers;

d. Whether Defendants' conduct injured consumers and, if so, the extent of the injury; and

e. The appropriate remedies for Defendants' conduct.

52. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class members because Plaintiff suffered the same injury as the Class members by nature of their purchases of the Products based on Defendants' deceptive and/or illegal conduct alleged herein.

53. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of each class. Plaintiff does not have any interests that are adverse to those of the Class members. Plaintiff has retained competent counsel experienced in class action litigation who intend to prosecute this action vigorously and have the financial means of doing so.

54. <u>Superiority</u>: A class action is superior to other available methods for the efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small,

the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

55. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and the New York Subclass Members)**

56. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

57. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

58. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

59. Defendants misleadingly and deceptively represent the Products to consumers.

60. Defendants further omitted material facts, including the presence of *Pseudomonas Aeruginosa* bacteria in the Products (or that the Products risked containing *Pseudomonas Aeruginosa*).

61. Defendants' unlawful consumer-oriented conduct is misleading in a material way because Plaintiff and the other class members believed that the Products did not contain *Pseudomonas Aeruginosa* bacteria.

62. Plaintiff and other Class Members paid extra money for accurately labeled Products

free from *Pseudomonas Aeruginosa* bacteria. Had Plaintiff and reasonable consumers known that the Products contained (or risked containing) *Pseudomonas Aeruginosa* bacteria, they would not have purchased the Products at all or at least would not have paid as much for the Products.

63. Defendants engaged in its unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

64. Plaintiff and other Class Members have been injured inasmuch as they, having viewed the Products label, and paid a premium for the Products. Accordingly, Plaintiff and other Class Members paid more than what the Products they bargained for and received were worth.

65. Defendants' conduct as alleged herein constitutes a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a), and Plaintiff and other members of the Class have been damaged thereby.

66. As a result of Defendants' deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

67. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

68. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

69. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

16

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

70. Defendants' labeling contains a deceptive and materially misleading statement concerning its Products inasmuch as they misrepresented the Products were safe to use and free from *Pseudomonas Aeruginosa* bacteria.

71. Defendants' labeling contains deceptive and materially misleading omissions concerning the presence of *Pseudomonas Aeruginosa* bacteria.

72. Plaintiff and other Class Members have been injured inasmuch as they, having viewed Defendants' label, paid a premium for the Products. Plaintiff and other Class Members paid more than what the Products they bargained for and received were worth.

73. Defendants engaged in unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

74. Defendants' material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large.

75. As a result of Defendants' acts and practices in violation of GBL § 350, Plaintiff and class members are entitled to monetary and compensatory damages, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $500 per Products purchased.

# THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class Members)

76. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

77. Plaintiff and the Class conferred a benefit on Defendants in the form of monies paid to purchase Defendants' defective, contaminated and worthless Products.

78. Defendants voluntarily accepted and retained this benefit.

79. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products unfit for human use, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class request the Court:

(i) Enter an order certifying the proposed Class under Federal Rule of Civil Procedure 23(a) and (b)(3), as set forth above, naming Plaintiff as Class Representative of the Class, and appointing undersigned counsel for Plaintiff as Class Counsel;

(ii) Enter an order declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

(iii) Issue judgment declaring that Defendants have committed the violations of law alleged herein;

(iv) Issue judgment awarding statutory damages in the maximum amount for which the law provides;

(v) Issue judgment awarding monetary damages, including but not limited to any

compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

(vi) Issue judgment providing for any and all equitable monetary relief the Court deems appropriate;

(vii) Issue judgment awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

(viii) Issue judgment awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

(ix) Issue judgment awarding pre- and post-judgment interest to the extent the law allows; and

(x) Awarding such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all claims so triable.

Date: February 7, 2023

Respectfully submitted,

**REESE LLP**

*/s/ Charles D. Moore*
Charles D. Moore
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: 212-643-0500
Email: *cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**LAUKAITIS LAW FIRM LLC**
Kevin Laukaitis (Pro hac vice application forthcoming)
737 Bainbridge Street, #155
Philadelphia, PA 19147
Phone: (215) 789-4462
E-mail: klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Proposed Class*